RECEIVED
IN ALEXANDRIA, LA.

SEP 1 9 2012

TONY R. MOORE, CLERK
BY_____
         DEPUTY

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

| | |
|---|---|
| PABLO DURAN, JR., <br>     Petitioner <br><br> VERSUS <br><br> WARDEN MEDINA, <br>     Respondent | CIVIL ACTION <br> SECTION "P" <br> NO. 1:12-CV-00476 <br><br><br> JUDGE DEE D. DRELL <br> MAGISTRATE JUDGE JAMES D. KIRK |

## REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE

Pablo Duran, Jr. ("Duran") filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 on March 14, 2012, contesting his prison disciplinary proceedings at the Federal Correctional Institute in Pollock, Louisiana ("FCI-Pollock"). Duran alleges that the disciplinary charge on which he was convicted resulted in the loss of good time credit and reclassification of his custody/security status. Duran raises the following grounds for relief in his habeas petition:

> 1. Duran was denied due process at his December 2010 disciplinary rehearing because he was not given advance notice and afforded an opportunity to call witnesses or request a staff representative.
>
> 2. The Disciplinary Hearing Officer refused to interview Duran's requested witness and did not give a valid reason for refusing to do so.
>
> 3. Duran contends the evidence does not support the charge that he was fighting.

For relief, Duran asks that the incident report be expunged from his record, his good time restored, and his custody/security

classification recalculated.[1]

The Respondent filed a motion to dismiss Duran's petition, contending his claims are moot (Doc. 9). Duran filed an opposition to Respondent's motion (Doc. 11), to which the Respondent replied (Doc. 14), Duran responded again (Doc. 15), and Respondent replied again (Doc. 18). Duran's petition is now before the court for disposition.

## Law and Analysis

Duran was charged on July 20, 2009 with having been involved in a fight on June 11, 2009; Duran was convicted of that charge on December 17, 2009. As punishment, Duran lost 27 days of good time and ninety days of commissary, telephone and visiting privileges, was placed in disciplinary segregation for fourteen days, and a transfer to another facility was recommended (Doc. 102, pp. 6-10/32).

Duran appealed that decision and the Regional Director remanded the charge to the Disciplinary Hearing Officer ("DHO") for a new hearing (Doc. 1-2, pp. 11-12/32). A rehearing was held on December 5, 2010, and Duran was again convicted of the disciplinary charge and again appealed the finding (Doc. 102, pp. 15-28/32). On appeal, the Regional Director again remanded the charge to the DHO for a new hearing (Doc. 1-2, p. 31/32). On June 4, 2012, the DHO

---

[1] Duran contends his petition should be considered exhausted, and the Respondent does not dispute that claim or raise the defense of lack of exhaustion.

2

found that Duran had not committed the offense charged (fighting) and expunged the incident report from Duran's record (Doc. 9-2, Ex. A).

Duran contends in his habeas petition that he was not given advance notice to prepare for his appearance before the disciplinary hearing board on December 5, 2010 at 8:00 p.m., and therefore was not afforded an opportunity to call witnesses or request a staff representative. Duran contends he appealed to the Regional Director, who directed that the disciplinary process begin anew, but that a new hearing had not been held as of the time he filed his habeas petition on March 14, 2012. Duran also contends the Disciplinary Hearing Officer ("DHO") refused to interview Duran's requested witness and did not assign a valid reason for refusing to do so. Duran contends the DHO only stated that "the requested witness provided a statement during the investigative portion of the incident." Finally, Duran contends the evidence does not support the charge that he was fighting, arguing that he was assaulted, and that his injuries were not consistent with someone who had been in a fight and that he had been assaulted.

The Respondent correctly points out that the complaints in Duran's petition have been rendered moot. Duran's charge for fighting was dismissed and expunged, and his good time credit was restored, satisfying those requests.

However, Duran points out that he was transferred from a low

3

security prison to a medium security prison after he was convicted of fighting, so his custody/security classification has not been restored. In response, the Respondent contends that Duran's custody/security classification was restored to "low," but that he remains in a medium security facility due to his Greater Security Management Variable.

The Respondent shows, through an affidavit by Deanna Clark, the case manager at FCI-Pollock, that Duran's security classification before the June 11, 2009 fight was "low" (Doc. 14, Ex. A). After the fight, Duran's security classification was changed to "medium" because a "Greater Security Management Variable" was placed on Duran (Doc. 14, Ex. A). Clark explains in her affidavit that the effect of the Greater Security Management Variable was that the low security facility where he was incarcerated during the fight (FCI-Big Spring) was not suitable for an inmate who had involvement (whether guilty of fighting or not) in a large scale gang-related fight (Doc. 14, Ex. A). According to Clark, Duran was transferred from FCI-Big Spring (a low security facility) to FCI-Pollock (a medium security facility) on May 14, 2010 (Doc. 14, Ex. A). Clark further stated in her affidavit that a Greater Security Management Variable is not removed until the inmate goes one full year without receiving an incident report (Doc. 14, Ex. A). Therefore, Duran had the Greater Security Management Variable until March 22, 2011 (Doc. 14, Ex. A).

Duran argues, and the evidence indicates, that Duran was transferred to a medium security prison as part of his punishment for his disciplinary conviction for fighting; transfer was recommended by the disciplinary hearing officer (Doc. 102, pp. 6-10/32), and Duran's management variable was applied due to the fact that he had been found guilty of fighting on June 11, 2009. See Doc. 15-2, p. 5/22, Request for Transfer/Application of Management Variable. In fact, that document shows that Duran's custody classification was never changed from "low" after the fight; instead, he was given the Greater Security Management Variable as a result of the fight. Therefore, Duran has shown that he was transferred to a medium security facility because of the fighting conviction.

However, Clark states that Duran had another Greater Security Management Variable placed on him on February 2, 2011, after he was charged and convicted of possessing an unauthorized item and refusing to obey an order, before the original Greater Security Management Variable was removed on March 22, 2011. Further, on October 7, 2011, Duran was charged and convicted of possessing gambling paraphernalia, resulting in a continuation of the Greater Security Management Variable (Doc. 14, Ex. A). Clark states in her affidavit that Duran received an incident report charging him with being unsanitary or untidy on May 30, 2012, which is pending (Doc. 14, Ex. A). Clark states in her affidavit that, at this time,

Duran is not eligible for a transfer to a low security facility because he has received multiple incident reports (and Greater Security Management Variables) (Doc. 14, Ex. A).

Respondent contends that, since Duran's custody/security classification is "low," he has received all of the relief he requested in his habeas petition and, therefore, his habeas petition is moot. Respondent points out that Duran's confinement in a medium security facility is a result of his Greater Security Management Variable, which he has maintained through continuing disciplinary violations, and not because of his security classification.

Although Duran was originally transferred to a medium security facility due to the conviction for fighting, he remained there after that conviction was expunged because of other disciplinary violations.[2] Therefore, Duran has received all of the relief sought in his original habeas petition concerning the conviction for fighting.

Since Duran has been afforded all of the relief he sought in

---

[2] Moreover, Duran does not have a constitutionally protected interest in being assigned to a particular prison facility. Tighe v. Wall, 100 F.3d 41, 42 (5th Cir.1996) (per curiam); Biliski v. Harborth, 55 F.3d 160, 162 (5th Cir.1995). Because prison classification is a matter left to the discretion of prison officials, Scott v. FNU New, 387 Fed.Appx. 469 (5th Cir. 2010), and cases cited therein, Duran's claims as to the change in his security classification and his transfer to a higher security prison do not state a claim for the violation of a constitutional right cognizable under Section 2241.

this court, his habeas petition is moot and should be dismissed.

## Conclusion

Based on the foregoing discussion, IT IS RECOMMENDED that Duran's habeas petition be DISMISSED AS MOOT.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed.R.Civ.P. 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the district judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) CALENDAR DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED at Alexandria, Louisiana, on this 19th day of September 2012.

_____
JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE